**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| BYRON F. DAVID, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:22-cv-1154 (PTG/IDD) |
| | ) | (Bankruptcy Case No. 18-12396) |
| SUMMIT COMMUNITY BANK, | ) | |
| | ) | |
| Appellee. | ) | |

**MEMORANDUM OPINION & ORDER**

This matter comes before the Court on Debtor-Appellant Byron F. David's appeal from

United States Bankruptcy Judge Klinette H. Kindred's September 30, 2022 Memorandum Opinion

and September 30, 2022 Order Overruling Claim Objections. Dkt. 1. On appeal, David contends

that the Bankruptcy Court erred in its factual findings and application of Virginia law related to

challenging the validity of notary acknowledgments, application of the Federal Rules of Evidence

regarding authentication of evidence and admission of hearsay, and application of the Fourth

Circuit's spoliation doctrine. The Court dispenses with oral argument because it would not aid in

the decisional process. *See* Loc. Civ. R. 7(J); Fed. R. Civ. P. 78; Fed. R. Bankr. P. 8019(b)(3).

Accordingly, this matter is now fully briefed and ripe for decision. *See* Dkt. 9 ("Appellant Br.");

Dkt. 10 ("Appellee Br."); Dkt. 11 ("Appellant Reply").

For the reasons that follow, the Court affirms the Bankruptcy Court's September 30, 2022

Memorandum Opinion and September 30, 2022 Order Overruling Claim Objections.

## I.     BACKGROUND

### A.     Factual Background

Byron David ("David" or "Appellant") and Lisa David ("Mrs. David") were married from

1991 to 2012. Joint Appendix ("JA") 1114. During that time, David was part-owner of Blue Ridge Technical Services, Inc. ("BRTS"), along with his partner. JA 1113–14. Mrs. David, an accountant, handled the Davids' household finances and, from 2005 to 2012, served as BRTS' bookkeeper. JA 1115, 1117, 1123. Mrs. David, along with her partners, was also a part-owner of three real estate investment companies: David-Cantrall and Associates, Inc.; Luck Homes, LLC; and DCF I, LLC (collectively, "the David Business Entities"). JA 1123. From 2005 to 2012, Summit Community Bank ("Summit" or "Appellee") loaned over three million dollars to the David Business Entities in the form of five separate loans. JA 1–40. The promissory notes for these five loans bore the signatures of the partners and were secured by deeds of trust on properties owned by the David Business Entities and by personal guarantees from the partners and their spouses, including David. *See id.*; JA 998. When the David Business Entities defaulted on the loans, Summit foreclosed on the properties under the deeds of trust, including the Davids' personal residence. JA 1124. On August 29, 2012, after David received a phone call regarding an overrun joint credit card and David confronted Mrs. David about months of statements evidencing large charges on the card, Mrs. David committed suicide. JA 1116–19.

### B.    Procedural History

Summit sued David for the deficiencies due on the promissory notes for the five loans, and on July 10, 2018, David filed a Chapter 7 Bankruptcy Petition in the Bankruptcy Court. Summit filed five Claims against David's Bankruptcy Estate (Claims 3-3, 4-3, 5-3, 6-3, and 7-3). JA 1–40. On April 10, 2019, David's Chapter 7 case was converted to a Chapter 11 case. After conversion, David filed an Omnibus Claim Objection to Summit's five claims ("Omnibus Objections"). JA 41–59. On October 9, 2019, the Bankruptcy Court held an evidentiary hearing on David's Omnibus Objections. JA 981–1261. On January 27, 2020, the Bankruptcy Court

entered an Order sustaining David's objections to Claims 3-3, 5-3, 6-3, and 7-3 and overruling his objections to Claim 4-3 ("January 2020 Bankruptcy Opinion"). JA 1262. Summit appealed the Bankruptcy Court's ruling sustaining the objections as to Claims 3-3, 5-3, 6-3, and 7-3 to this Court.[1] JA 1278–81.

On March 31, 2021, United States District Judge Rossie D. Alston issued a Memorandum Opinion and Order reversing the Bankruptcy Court's ruling regarding Claims 3-3, 5-3, 6-3, and 7-3 and remanding to the Bankruptcy Court ("March 31, 2021 Order"). JA 1322–36. On April 14, 2021, David filed a Motion for Rehearing (JA 1337–59), which Judge Alston denied on February 1, 2022.[2]

On April 5, 2022, the Bankruptcy Court held a status conference, took Claims 3-3, 5-3, 6-3, and 7-3 under advisement, and ordered the parties to provide proposed findings of fact and conclusions of law. JA 1411; *see also* JA 1421–79. On September 30, 2022, the Bankruptcy Court issued a Memorandum Opinion overruling David's Omnibus Objections ("September 2022 Bankruptcy Opinion"), JA 1518–27, and an Order Allowing Claim, JA 1528. On October 13, 2022, David timely filed his notice of appeal. JA 1529–42.

---

[1] David cross-appealed the Bankruptcy Court's ruling overruling his objections as to Claim 4-3 (the "cross-appeal"). On May 4, 2021, District Judge Rossie D. Alston affirmed the Bankruptcy Court in the cross-appeal. *See David v. Summit Cmty. Bank*, 536 F. Supp. 3d 68 (E.D. Va. 2021), *amended on denial of reh'g*, No. 120-cv-00721, 2022 WL 303300 (E.D. Va. Feb. 1, 2022).

[2] This Order denying David's Motion for Rehearing is not included in the Joint Appendix and instead can be found at *Summit Cmty. Bank v. David*, No. 120-cv-00137, 2022 WL 303242 (E.D. Va. Feb. 1, 2022). Summit contends that this omission was not intentional, as the document was included in Summit's Designation of Additional Items to be Included in the Record on Appeal, which was submitted to the Bankruptcy Court on November 9, 2022. Appellee Br. at 15 n.4. The February 1, 2022 Order in the Joint Appendix is Judge Alston's Order denying David's Motion for Rehearing with respect to the May 4, 2021 Memorandum Opinion issued in the cross-appeal. *See* JA 1401–08.

## II.     LEGAL STANDARD

Federal district courts are empowered to hear appeals from "final judgments, orders, and decrees" issued by the bankruptcy court. 28 U.S.C. § 158(a)(1). When considering an appeal from the bankruptcy court, the district court reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *Shin v. Lee*, 550 F. Supp. 3d 313, 318 (E.D. Va. 2021) (citing *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). When conducting *de novo* review, the appellate court applies the same standards of review that were applied in the court being reviewed. *See In re Merry-Go-Round Enters., Inc.*, 400 F.3d 219, 224 (4th Cir. 2005). Mixed questions of law and fact are reviewed "under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining *de novo* the legal conclusions derived from those facts." *Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996).

Decisions of the bankruptcy court applying the Federal Rules of Evidence are reviewed for abuse of discretion, and interpretations of such Rules are reviewed *de novo*. *In re C.R. Bard, Inc.*, 810 F.3d 913, 923 (4th Cir. 2016). "Under the abuse of discretion standard, the district court will not reverse the bankruptcy court unless its conclusion was 'guided by erroneous legal principles,' or 'rests upon a clearly erroneous factual finding.'" *In re Yankah*, 514 B.R. 159, 163 (E.D. Va. 2014) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)). When evaluating whether the bankruptcy court abused its discretion, "this Court may not substitute its judgment for that of the [bankruptcy] court; rather, we must determine whether the court's exercise

of discretion, considering the law and the facts, was arbitrary or capricious." *United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995).

## III.    DISCUSSION

"The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim. The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim." *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004) (citing 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f)). Once a proof of claim is filed, the burden shifts to the debtor to object to the claim by "introduc[ing] evidence to rebut the claim's presumptive validity." *Id.* (citing 11 U.S.C. § 502(b); Fed. R. Bankr. P. 9017; Fed. R. Evid. 301). If the debtor meets this burden, "the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence." *Id.* Here, as Summit filed five Claims, the burden shifted to David to object to Summit's Claims by presenting evidence to rebut their presumptive validity. David filed such objections and, on remand from this Court, the Bankruptcy Court in its September 2022 Opinion found that David had not met his burden as to Claims 3-3, 5-3, 6-3, and 7-3. JA 1527.

David presents the following issues on appeal: whether (1) the Bankruptcy Court erred in its factual findings in its September 2022 Opinion and whether that Opinion is "irreconcilable" with its January 2020 Opinion; (2) the Bankruptcy Court correctly applied Virginia law on remand when considering David's challenges to the signatures appearing on the instruments underlying Summit's Claims; (3) the Bankruptcy Court correctly applied the Federal Rules of Evidence in admitting specific exhibits presented by Summit during the evidentiary hearing; and (4) the Bankruptcy Court correctly applied the Fourth Circuit's spoliation doctrine in its January 2020 Opinion. Appellant Br. at 1–2. The Court will address each issue on appeal in turn.

A. **The Bankruptcy Court Did Not Clearly Err in Its Factual Findings in Its September 2022 Opinion**

David argues that the factual findings in the September 2022 Bankruptcy Opinion are clearly erroneous and cannot be reconciled with the factual findings in the January 2020 Bankruptcy Opinion. Appellant Br. at 19. Summit counters that the only relevant inquiry here is whether the Bankruptcy Court clearly erred in issuing its September 2022 factual findings, and submits that the Bankruptcy Court did not clearly err. Appellee Br. at 14. The Court agrees.

David does not identify any specific factual finding that he contends is clearly erroneous. To the extent that David challenges the Bankruptcy Court's credibility determination of notary Victoria Melby, the Court gives the Bankruptcy Court's determination "due regard[,]" *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 250 (4th Cir. 1994), and finds that it is not "unreasonable," does not "contradict[] other findings of fact," and is not "based on an inadequate reason or no reason at all[,]'" and thus, "should be accepted[,]" *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (quoting *NLRB v. McCullough Env't Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)); *see also Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 199–200 (4th Cir. 2000) (noting the plaintiff's credibility is "quintessentially a question of fact" (citation omitted)).

In its September 2022 Opinion, the Bankruptcy Court correctly recounted that Melby: testified that Exhibits 20, 53, 85, 113, and 142 (original signed alonges) appeared to contain her signature and seal; testified that she "[u]sually" checked signatories' identification before notarizing; testified that the signatory had to "appear physically in front of [her]"; and recognized David as a customer of her bank, but did not specifically recall David signing Exhibits 20, 53, 85, 113, and 142 before her. JA 1522; *see* JA 1086–98. The Bankruptcy Court noted that while it had previously found Melby's testimony to be "tentative" in its January 2020 Opinion, on review, it found that Melby's testimony "did not indicate a lack of veracity, but instead indicated timidity

6

with respect to (i) testifying to events [Melby] did not specifically remember and (ii) analyzing her seal and signature on the documents that she did not specifically remember." JA 1525. Despite David's contention that the Bankruptcy Court erred by revising its January 2020 credibility determination as to Melby, Appellant Br. at 20, the Bankruptcy Court's ultimate determination as to Melby's credibility is not unreasonable or inconsistent with the evidence. Upon review of the September 2022 Bankruptcy Opinion, the Court finds that the factual findings and the credibility determinations of witnesses therein[3] are supported by the record and contain no clear error. *See* JA 1518–23.

David also argues that the Bankruptcy Court's factual findings from its January 2020 Opinion "are entitled to deference." Appellant Br. At 26. David cites no authority to support his contention that a bankruptcy court's factual findings on remand must be "reconciled" with prior factual findings supporting a judgment that was reversed on appeal. David merely insists that because he believes the January 2020 Bankruptcy Opinion was correct, the September 2022 Bankruptcy Opinion, which reached a different conclusion, must be illogical. Appellant Reply at 18. Thus, the Court dismisses David's arguments as conclusory and unsupported by case law.[4]

---

[3] The Bankruptcy Court also correctly recounted that notary Kerry Self: identified her signature and seal on Exhibits 7 and 37; testified that she "never" notarized a document without having the person in front of her; did not specifically recall notarizing Exhibits 7 and 37 for David; and testified that she did not follow her normal process of photocopying the signatory's identification prior to notarization with David because of her personal relationship with Mrs. David. JA 1523; *see* JA 1102–11. The Bankruptcy Court did not expressly opine on Self's credibility. The Bankruptcy Court correctly recounted that David denied signing any of the guarantees before notaries, and specifically denied signing any of the Exhibits before Melby, Self, and Jeanne Estes. JA 1523; *see* JA 1125–43. The Bankruptcy Court did not expressly opine on David's credibility.

[4] Moreover, the factual findings in the January 2020 Bankruptcy Opinion to which David cites, *see* Appellant Br. at 16–19, lie at the heart of this Court's reversal of that Opinion. Those findings were integral to the Bankruptcy Court's analysis of the notary acknowledgments—an analysis that had not, as this Court found, clearly applied the proper presumption or burden-shifting framework used in Virginia. *See* JA 1330–32.

**B.**     **The Bankruptcy Court Correctly Applied Relevant Law, Weighed the Evidence, and Found that David Failed to Rebut the Presumption of the Claims' Validity**

David argues that the September 2022 Bankruptcy Opinion "demonstrates a fundamental misunderstanding of the applicable burden shifting framework pursuant to Virginia law and the level of evidence needed to overcome a presumption." Appellant Br. at 29. David specifically argues that the Bankruptcy Court erred in its September 2022 Opinion by (1) finding that David failed to present evidence sufficient to rebut the presumption of Summit's Claims' validity; (2) considering David's evidence "piecemeal" rather than as a whole; and (3) misapplying Virginia law regarding notary acknowledgments.[5] *Id.* at 28–36. The Court finds that the Bankruptcy Court correctly applied relevant Virginia law, properly used the burden-shifting framework for proving the amount and validity of the claims, and weighed the evidence in its September 2022 Opinion.[6]

*1.    Virginia Law Regarding Notary Acknowledgments*

The Court first considers David's argument about the relevant Virginia law regarding notary acknowledgments. Summit contends that under the *Murdock* framework, documents acknowledged by a notary are presumed valid and the burden is on David, the party challenging the validity of the notarized documents, to present proof of nonappearance or fraud that is

---

[5] All the aforementioned arguments—except for the argument that the Bankruptcy Court misapplied Virginia law regarding notary acknowledgments—are contained in the first section of David's brief, wherein David argues that the September 2022 Bankruptcy Opinion "was not the product of a just, fair or reasonable fact-finding process." *Id.* at 15. However, these arguments are more appropriately categorized as implicating questions of law. Thus, the Court will consider them under a *de novo* standard of review.

[6] David also argues that this Court erred in its March 31, 2021 Order by directing the Bankruptcy Court to apply the burden-shifting framework in *Murdock v. Nelms*, 186 S.E.2d 46 (Va. 1972), when analyzing the notary acknowledgements, instead of the framework articulated in *First Nat. Bank of Martinsville & Henry Cnty. v. Roy N. Ford Co.*, 252 S.E.2d 354 (Va. 1979). Appellant Br. at 33–34. David cites no authority to support the proposition that a district judge may review the decision of another district judge sitting as an appellate court in a bankruptcy matter. Regardless, the Court did not err in its March 31, 2021 Order.

"positive, cogent, and convincing" and sufficient to overcome the presumption of validity. Appellee Br. 20, 24 (citing *New v. H. E. Harman Coal Corp.*, 26 S.E.2d 39, 42 (Va. 1943)). Conversely, David contends that under the standard in *First. Nat. Bank*, denial of appearance before the notary "plus some other evidence" is sufficient to shift the burden to the party offering the signatures as genuine. Appellant Br. at 32, 36. Summit contends that this is a "gross[] mischaracteriz[ation]" of Virginia law. Appellee Br. at 29.

In Virginia, the "taking and certifying of acknowledgments"—including notarizing—"is a judicial act." *Murdock*, 186 S.E.2d at 49. Where there is "an appearance before the certifying officer, his determination of the matters involved has the conclusive force and effect of a judgment and imparts absolute verity," which can only be impeached for fraud or nonappearance. *Id.* If there is a showing of nonappearance—that is, "that the person who is alleged to have executed the instrument in question never appeared before the certifying officer and never actually acknowledged the instrument"—"no fraud need be shown." *Id.* For either fraud or nonappearance, the burden of attacking the genuineness of a notarized signature "rests upon the one alleging [fraud or nonappearance]" and "to carry this burden the proof must be clear, cogent, satisfactory and convincing beyond reasonable controversy." *Id.*; *see also New*, 26 S.E.2d at 42 ("Forgery is a felony. Its commission will not be presumed.... When [forgery is] relied upon for the cancellation of an instrument, it must be proved by clear and satisfactory evidence — evidence that is positive, cogent, and convincing."). David contends that the framework articulated in *First Nat. Bank*, not *Murdock*, applies, which provides that

> where the effectiveness of a signature on a negotiable instrument is put in issue by a specific denial, the signature is presumed to be genuine or authorized, and the party claiming under the signature is not put to his proof until the party making the denial has produced "some evidence . . . which would support a finding that the signature is forged or unauthorized."

Appellant Br. at 29, 32 (quoting 252 S.E.2d at 358).

Although *First Nat. Bank* does state verbatim that the party denying the signature must present "some evidence[,]" 252 S.E.2d at 358, the Court finds David's recitation of this standard without additional context misleading. The Virginia Supreme Court in *First Nat. Bank* quotes the "some evidence" standard from an earlier case, *Virginia Nat. Bank v. Holt*, 219 S.E.2d 881 (Va. 1975). *Holt* elaborated on what "some evidence" means in practice, explaining that "[t]he evidence need not be sufficient to require entry of summary judgment in the defendant's favor, but it must be enough to support his denial by permitting a finding in his favor." 219 S.E.2d at 883 (internal quotation marks omitted). Clearly, then, the Virginia Supreme Court did not intend "some evidence" to mean the mere presentation of *any* evidence, but rather, evidence that sufficiently rebuts the presumption of validity of a notarized signature.

Ultimately, all of the abovementioned cases set forth different articulations of the same burden-shifting framework and standard: that a notarized signature is presumed genuine, and that when a party challenges such a signature, the burden rests on the challenging party to present evidence of fraud or nonappearance sufficient to overcome the presumption. Both this Court (in its March 31, 2021 and February 1, 2022 Orders) and the Bankruptcy Court (in its September 2022 Opinion) found that the standard as articulated in *Murdock* applied. *See* JA 1330–32, 1524; *David*, 2022 WL 303242, at *5–6. The Court finds no error here. The burden is on David to present proof of fraud or nonappearance that is "clear, cogent, satisfactory and convincing beyond reasonable controversy[,]" *Murdock*, 186 S.E.2d at 49, that is sufficient to "support a finding that the signature is forged or unauthorized[,]" *First Nat. Bank*, 252 S.E.2d at 358.

### 2.    *Sufficiency of the Evidence*

The Court finds, as the Bankruptcy Court did, that David failed to present "clear, cogent, [and] satisfactory" proof of nonappearance that was "convincing beyond reasonable controversy."

*Murdock*, 186 S.E.2d at 49. The *only* evidence David presented that supported a finding of nonappearance is his denial that he signed any of the relevant guarantees before any notary and his specific denials that he appeared before Melby, Self, and Estes with respect to the relevant guarantees. *See* JA 1125–43. This evidence is not clear, cogent, satisfactory, or convincing to prove David's nonappearance. The notaries' testimony identifying their signatures and seals on the relevant documents, but stating that they did not specifically recall the documents or David appearing before them with respect to the documents, likewise does not support a finding of David's nonappearance.[7] *See* JA 1095–98 (Melby's testimony), 1103, 1106–08 (Self's testimony). Just because the notaries do not remember David appearing before them with respect to specific documents fifteen years prior does not foreclose the possibility that it actually occurred. Thus, David's denials together with the notaries' testimony is a far cry from proof of nonappearance that is "clear, cogent, satisfactory and convincing beyond reasonable controversy[,]" *Murdock*, 186 S.E.2d at 49, or that is sufficient to "support a finding that the signature is forged or unauthorized[,]" *First Nat. Bank*, 252 S.E.2d at 358.

David's other evidence—that appears to go to fraud rather than nonappearance—fares no better. David argues that his handwriting expert, John Hargett, provided "compelling circumstantial evidence that a forged signature appeared on a notarized document." Appellant Br. at 22. Hargett testified that his conclusions used a nine-point scale tracking degrees of certainty, where a one was akin to a positive identification of the signatory and a nine was akin to a negative identification. JA 1072–74. Hargett examined thirty-seven documents, including five original documents and thirty-two photocopied documents, purportedly signed by David. JA 1056. While Hargett initially testified that the signatures on the five originals—Exhibits 20 (JA 594–609), 53

---

[7] Nor is the notaries' testimony "compelling circumstantial evidence" of fraud, as David contends. Appellant Br. at 20.

(JA 615–33), 85 (JA 641–56), 113 (JA 657–72), and 142 (JA 673–87)—"were not genuine signature[sic]. They were not written by [David,]" JA 1056, Hargett clarified shortly thereafter that they "[a]ppeared not to be [David's] signature." JA 1057. Hargett also determined that, of the thirty-two photocopies, five signatures—Exhibits 4 (JA 590), 7 (JA 591–93), 34 (JA 610–11), 37 (JA 612–14), and 70 (JA 634–40)—"had the appearance, or appeared to be [David's] signature" and the other twenty-seven "did not." *Id.* Hargett clarified that the term "appeared to be" had the same meaning as "probably" or "could be." JA 1074. Hargett testified, however, that he was not able to conclude to an "100 percent" certainty that any of the signatures were not David's. JA 1073. Moreover, Hargett testified that he did not recall seeing any physical evidence of signatures being cut and pasted. *Id.* Thus, the Court finds that Hargett's expert testimony does not constitute proof of fraud that is "convincing beyond reasonable controversy[,]" *Murdock*, 186 S.E.2d at 49, or otherwise sufficient to overcome the presumption of validity to "support a finding that the signature is forged or unauthorized[,]" *First Nat. Bank*, 252 S.E.2d at 358.

David also argues that the Bankruptcy Court "ignore[d] the importance" of Elle LoCascio's testimony. Appellant Br. at 30. LoCascio testified that, after Mrs. David's death, she had gone through Mrs. David's "professional and personal things" and discovered "hundreds" of documents that were shredded, "cut, doctored[,]" taped, and "altered and manipulated." JA 1033. This, David argues, provided "compelling circumstantial evidence of [Mrs. David's] fraud and forgery." Appellant Br. at 30. However, the Court agrees with the Bankruptcy Court that LoCascio "did not identify any documents that related to the loans and guarantees at issue in this matter." JA 1525; *see* JA 1043 (LoCascio testifying that she "specifically" recognized BRTS financial statements among the numerous shredded and altered documents).

David also argues that "Summit intentionally destroyed the original guarantees."

Appellant Br. at 21. However, Summit's corporate designee, Patrick Frye, testified that, at the time Summit destroyed the relevant guarantees, it was Summit's then-current document retention policy to "scan all documents in" and to "keep the original notes and deeds of trust, and destroy all other documents," including guarantees. JA 1014; *see also* JA 1010–11 (David reading into the record Frye's deposition testimony that the guarantees were likely shredded within thirty days of signing). Thus, without any proof that Summit destroyed the guarantees in bad faith, or otherwise not in accordance with its document retention policy, the Court does not regard the destruction of the original guarantees pursuant to a routinely applied document retention policy as evidence of fraud. Considering all of the relevant evidence, the Court finds that David falls short of presenting proof of either nonappearance or fraud that is "clear, cogent, satisfactory and convincing beyond reasonable controversy[,]" *Murdock*, 186 S.E.2d at 49, and sufficient to "support a finding that the signature is forged or unauthorized[,]" *First Nat. Bank*, 252 S.E.2d at 358. In other words, David has failed to rebut the presumption that the notarized signatures on the guarantees are genuine.

Furthermore, because David has failed to present proof sufficient to support a finding that the signatures are not genuine, his next argument—that he provided evidence sufficient to rebut the presumption of Summit's Claims' validity, Appellant Br. at 28—necessarily fails. Summit's Claims are entitled to a presumption of validity, which can only be overcome by a preponderance of evidence. *See Harford*, 372 F.3d at 640 (citing Fed. R. Bankr. P. 9017; Fed. R. Evid. 301). For the foregoing reasons, David has failed to present such a preponderance. Thus, as the Court presumes that David's signature on the guarantees are valid, the Court also presumes that Summit's Claims are valid. The Court finds no error in the September 2022 Bankruptcy Opinion on this point.

Finally, David also argues that the Bankruptcy Court considered the evidence "piecemeal" and by using an impermissible "divide and conquer approach." Appellant Br. at 27, 30–31; Appellant Reply at 9–11. Summit counters that the Bankruptcy Court "carefully examined and weighed" each piece of evidence on remand and correctly concluded that such evidence did not meet the clear and convincing standard needed to overcome the presumption of validity. Appellee Br. at 25–26. The Court agrees and finds that there is no indication in the September 2022 Opinion that the Bankruptcy Court failed to consider all of the evidence as a whole. Thus, the Court dismisses David's allegations as conclusory. *See* JA 1539–41.

### C. The Bankruptcy Court Did Not Abuse Its Discretion By Admitting Exhibits 37 and 70, and Its Admission of Exhibits 34, 158, and 159 Was Harmless Error

David next argues that the Bankruptcy Court committed reversible error by (1) admitting into evidence Summit's Exhibits 4, 7, 34, 37, and 70 without authentication;[8] (2) permitting Summit to introduce photocopies into evidence in violation of Federal Rules of Evidence 1002 and 1003; and (3) admitting into evidence the expert report and accompanying exhibits of Ronald Morris in violation of Federal Rules of Evidence 801 and 802. Appellant Br. at 36–37. The Federal Rules of Evidence are applicable in bankruptcy proceedings. *See* Fed. R. Evid. 1101(a). For the foregoing reasons, the Court finds the Bankruptcy Court did not abuse its discretion in admitting Exhibits 37 and 70. The Court also finds that though the Bankruptcy Court abused its discretion in admitting Exhibits 34, 158, and 159, such errors were harmless.

    *1.*    *Exhibits 34, 37, and 70 (Photocopies of Signed Guarantees)*

---

[8] Summit correctly contends (and David does not rebut) that Exhibits 4 and 7 were offered in support of Loan No. 358003, Claim 4-3, which is not at issue in the present appeal. *See David v. Summit Cmty. Bank*, 536 F. Supp. 3d 68 (E.D. Va. 2021), *amended on denial of reh'g*, No. 120-cv-00721, 2022 WL 303300 (E.D. Va. Feb. 1, 2022) (Judge Alston affirming the Bankruptcy Court's decision overruling David's objection as to Claim 4-3); JA 1527 (Bankruptcy Court overruling David's objections to Claims 3-3, 5-3, 6-3, and 7-3). Accordingly, the Court focuses its analysis on Exhibits 34, 37, and 70.

Exhibits 34, 37, and 70 were admitted into evidence at the evidentiary hearing during Summit's cross-examination of Hargett, David's handwriting expert. *See* JA 1078. At the time of admission, David objected on the grounds that there was "no authentication of th[e] documents under Rule 1001, 1002." *Id.* Bankruptcy Judge Kindred overruled David's objection, stating that the documents were "part of the proof of claim, and they were submitted as support for the proof of claim." *Id.* David contends on appeal that the Bankruptcy Court erred by admitting the Exhibits over David's objections that Summit failed to properly authenticate the documents. Appellant Br. at 37. Summit argues that the Exhibits were identified by Frye, Summit's corporate designee, and were properly admitted under Rule 901. Appellee Br. at 34. Moreover, Summit notes that because Exhibits 37 and 70 are notarized, they were also properly admitted under Rule 902(8). *Id.* Finally, Summit argues that because Exhibit 34 is a duplicate offered absent a showing of bad faith, it was also properly admitted under Rules 1003 and 1004. *Id.* at 34–35.

At the outset, the Court takes care not to conflate two requirements under the Rules of Evidence: (1) that an item of evidence, *e.g.*, a writing, be *authenticated* prior to admission, and (2) that a writing must be the *original* unless provided otherwise. The Federal Rules of Evidence cited by David at the time of the Exhibits' admission—Rules 1001 and 1002—regard admission of *originals*. Rule 1001 defines the terms "writing," "recording," "photograph," "original," and "duplicate," and Rule 1002 states that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Rule 1003 and Rule 1004(a) also provide, respectively, that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate" and "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals

are lost or destroyed, and not by the proponent acting in bad faith." Thus, Rules 1001 and 1002 do not require authentication and do not bar admission of Exhibits 34, 37, or 70.

Regarding *authentication*, Rule 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Such evidence may include the testimony of a witness with knowledge "that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1). Some items, however, are "self-authenticating" and "require no extrinsic evidence of authenticity in order to be admitted[.]" Fed. R. Evid. 902. For example, documents "accompanied by a certificate of acknowledgment that is lawfully executed by a notary public or another officer who is authorized to take acknowledgments" fall into the "self-authenticating" category. *Id.* at 902(8).

Here, Exhibits 34, 37, and 70 are photocopies of signed guarantees. At the evidentiary hearing, Summit's representative testified that only copies were available as the original signed guarantees were digitally scanned, then shredded pursuant to the bank's then-current document retention policy. *See* JA 1014–15 (testimony of Frye). David contends on appeal that there are genuine questions regarding the authenticity of the originals and that it was "unfair" to admit the duplicates, primarily because it is unclear "whether Summit ever possessed authentic originals" and "Summit provided no basic evidence to support the authenticity and genuineness" of the Exhibits. Appellant Br. at 40. David's cry of unfairness, thus, appears to stem from the alleged lack of authentication of the original documents from which the Exhibits were photocopied.

To the extent David challenges the Exhibits' admission on authentication grounds, the Bankruptcy Court did not abuse its discretion in admitting Exhibits 37 and 70. As Summit correctly contends, Exhibits 37 and 70 are notarized, and thus, "require[d] no extrinsic evidence

of authenticity in order to be admitted[.]" Fed. R. Evid. 902(8).  David does not argue or cite any

binding or persuasive case law that Rule 1003's provision that a "duplicate is admissible to the

same extent as the original" is inapplicable to notarized documents (which are presumed to be

genuine).  David's allegations of unfairness rely primarily on his contention that the original

documents were the product of "fraud and forgery by Lisa David." Appellant Br. at 41.  However,

as discussed above, David's proof fails to rise to the threshold of "clear, cogent, satisfactory and

convincing beyond reasonable controversy[,]" *Murdock*, 186 S.E.2d at 49, that is sufficient to

support a finding that the notarized signatures are "forged or unauthorized[,]" *First Nat. Bank*, 252

S.E.2d at 358.[9]  Thus, the Bankruptcy Court's decision to admit Exhibits 37 and 70 was within its

discretion.

However, the Bankruptcy Court abused its discretion by admitting Exhibit 34.  Summit

moved for admission of Exhibit 34 during cross-examination of David's handwriting expert, who

was testifying as to the genuineness of the signature on the document. JA 1078. The Bankruptcy

Court admitted the Exhibit because it was "submitted as support for the proof of claim." *Id.*  This

explanation in and of itself does not comport with authentication requirements under the Federal

Rules of Evidence.[10]   Exhibit 34 is not notarized, and is not otherwise a self-authenticating item

---

[9] David's reliance on *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362 (2d Cir. 2003), is
unavailing. In *Opals*, the Second Circuit found the district court had properly held a photocopy of
an agreement inadmissible under Rule 1003. *Id.* at 371. The Second Circuit noted that because
the proponent could not produce the original signed agreement, the opponent had produced a
version of the agreement that was "materially different" than the proponent's copy, and the
proponent conceded that at least one other photocopied agreement it had produced in the case was
a "forgery," it was unfair to admit the agreement. *Id.*  These facts are distinguishable from the
present case where Summit contends the original guarantees are unproduceable because they were
destroyed under a routine document retention policy, and where there is no concession from
Summit, nor clear and convincing evidence, that any of the documents it produced are not genuine.

[10] Federal Rule of Bankruptcy Procedure 3001(f) provides that a properly filed proof of claim is
"prima facie evidence of the validity and amount of the claim[,]" but does not set forth a "method
of authentication or identification[,]" Fed. R. Evid. 901(10), that satisfies authentication

of evidence under Rule 902. At the time of Exhibit 34's admission, Summit did not "produce evidence sufficient to support a finding that the item is what [Summit] claims it is[,]" such as testimony from a witness with knowledge that Exhibit 34 "is what it is claimed to be." Fed. R. Evid. 901(a), (b)(1).

The Court also finds, however, that the Bankruptcy Court's admission of Exhibit 34 was harmless error. *See* Fed. R. Bankr. P. 9005; Fed. R. Civ. P. 61. Though untimely offered, *see, e.g.*, *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 n.2 (4th Cir. 2018) ("Rule 901 of the Federal Rules of Evidence requires that a proponent of evidence produce sufficient evidence to support a finding that the evidence is what the proponent claims it to be before it may be admitted into evidence."), Summit did ultimately offer witness testimony identifying Exhibit 34, along with the other guarantees. *See* JA 1231 (Frye confirming that "all of the guarantees" presented as Exhibits were "documents that are held by Summit"). Furthermore, the Court finds that Exhibit 34 (a photocopy of a signed guaranty) is cumulative of Exhibit 37 (a photocopy of a notarized signed guaranty), which was admissible as a self-authenticating piece of evidence, as both are attached to the proof of claim for Claim 5-3, *see* JA 11–20. *See United States v. Seidman*, 156 F.3d 542, 558 (Michael, J., concurring) (4th Cir. 1998) ("Improper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error." (quoting *Smith v. Firestone Tire & Rubber Co.*, 755 F.2d 129, 132 (8th Cir. 1985))); *United States v. Clarke*, 2 F.3d 81, 85 (4th Cir. 1993) (finding that an improperly admitted statement was "plainly cumulative" and admission was, therefore, harmless). Moreover, Claim 5-3 is also supported by Exhibit 53, an original, signed, notarized allonge whose admission David does not challenge. *See* JA 1091–93. Thus, the Court finds that admission of Exhibit 34 was harmless because it did not affect David's

---

requirements under Federal Rule of Evidence 901.

substantial rights and does not require disturbing the Bankruptcy Court's judgment overruling David's objection to Claim 5-3.

2.      *Exhibits 158 and 159 (Expert Report of Ronald Morris and Accompanying Exhibits)*

Exhibits 158 (JA 688–93) and 159 (JA 694–785), the expert report of Ronald Morris, Summit's handwriting expert, and the exhibits accompanying the report, were admitted into evidence at the evidentiary hearing during Summit's direct examination of Morris.  *See* JA 1176. At the start of Morris' testimony, after Morris confirmed that the "report expresse[d] [his] expert opinions that [we]re related to the documents in question in this case[,]" Summit moved for admission of Exhibit 158.  JA 1170.  David objected on hearsay grounds.  *Id.*  The Bankruptcy Court reserved ruling on the objection until it received further testimony from Morris about his findings.  JA 1171–76.  Upon receiving this testimony, the Bankruptcy Court admitted Exhibits 158 and 159 over David's hearsay objection.  David contends that the Bankruptcy Court abused its discretion by admitting the Exhibits in violation of Federal Rules of Evidence 801 and 802, which prohibit the admission of hearsay.  Appellant Br. at 44.  Summit counters that the Exhibits were admissible under Rule 1006, as a "summary . . . to prove the content of voluminous writings . . . that cannot be conveniently examined in court."  Appellee Br. at 38–39.

Upon review of the record, the Court finds that the Bankruptcy Court abused its discretion in admitting Morris' expert report and related exhibits.  The Bankruptcy Court did not explain its reasoning overruling David's hearsay objection at the evidentiary hearing.  Accordingly, it is not clear what Rules or evidentiary principles the Bankruptcy Court relied on in making its ruling. The expert report is hearsay outside the delineated exceptions.  *See, e.g., Page v. Virginia State Bd. of Elections*, No. 3:13-cv-678, 2015 WL 3604029, at *30 n.42 (E.D. Va. June 5, 2015) (noting that that "expert reports are hearsay and hence not admissible usually").  Thus, the Bankruptcy

Court's admission of Exhibits 158 and 159 was "arbitrary or capricious," *Mason*, 52 F.3d at 1289, particularly given its lack of explanation in overruling David's hearsay objection.

However, such error was harmless and did not affect David's substantial rights. *See* Fed. R. Bankr. P. 9005; Fed. R. Civ. P. 61. The expert report appears to be largely cumulative of Morris' hearing testimony and David had the opportunity to cross-examine Morris extensively at the evidentiary hearing about both his testimony and report. *See* JA 1180–1209; *cf. Tokio Marine & Fire Ins. Co. v. Norfolk & W. Ry. Co.*, Nos. 98-1050, 98-1077, 1999 WL 12931, at \*4 (4th Cir. 1999) (per curiam) (unpublished table decision) ("Reports stating an expert opinion 'are not admissible without the preparer being present in court to testify as to his qualifications as an expert and to be cross-examined on the substance.'" (quoting *Forward Commc'ns Corp. v. United States*, F.2d 485, 511 (Ct. Cl. 1979))). Furthermore, the September 2022 Bankruptcy Opinion relied primarily on the findings of Hargett, David's handwriting expert—not Morris. *See* JA 1525–26. The Bankruptcy Court's only reference to Morris' testimony was that he "was not able to determine whether the Allonges, bearing pen and ink signatures, were signed by [David,]" which the Bankruptcy Court noted was "not clear and convincing evidence of fraud or nonappearance[.]" JA 1526. Thus, the Court finds that admission of Exhibits 158 and 159 was harmless because it did not affect David's substantial rights and does not require disturbing the Bankruptcy Court's judgment overruling David's objection to the Claims.[11]

---

[11] David contends that "[w]ithout the improper admission of Exhibit 159 into evidence, the guarantees underlying Claims 6-3 and 7-3 were not in evidence" and this "mandates the entry of judgment in favor of Mr. David sustaining his objections to Summit's Claim Nos. 6-3 and 7-3." Appellant Br. at 47–48; *see also* Appellant Reply at 27 ("[W]ithout [Exhibit 159] in evidence, Summit has no documents to support Claims 6-3 or 7-3."). This contention is untrue. Beyond the guarantees underlying Claims 6-3 and 7-3, Claim 6-3 is also supported by Exhibit 113 and Claim 7-3 by Exhibit 142, which are both original, signed, and notarized allonges that were properly admitted outside of their inclusion in Exhibit 159. *See* JA 1094.

**D.     The Bankruptcy Court Did Not Err By Finding David Failed to Establish Spoliation Against Summit**

Finally, the parties dispute whether the Bankruptcy Court correctly applied the Fourth Circuit's spoliation doctrine.   Appellant Br. at 48; Appellee Br. at 41.   In its January 2020 Opinion,[12] the Bankruptcy Court found that because Summit had no reason to know at the time of signing or destruction of the guarantees that they may be relevant to future litigation, Summit had no duty to preserve the original guarantees.  JA 1272.  The Bankruptcy Court thus concluded that it could not "disallow the claims based on spoliation of the original guarantees."  JA 1273.  The Bankruptcy Court did not err in so holding.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  This doctrine "is not a substantive claim or defense but a 'rule of evidence,' and thus is 'administered at the discretion of the trial court.'"  *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995)).   "Accordingly, . . . the refusal to apply a spoliation inference must stand unless it was an abuse of the [trial] court's 'broad discretion[.]'"  *Id.* (quoting

---

[12] This Court's March 31, 2021 Order reversed the January 2020 Bankruptcy Opinion and remanded the matter "to the Bankruptcy Court with the instruction that the Bankruptcy Court apply the proper standard and consider how the evidence fits within [the] framework [articulated in *Murdock*]." JA 1332 (internal citation omitted). The March 31, 2021 Order did not reference the Bankruptcy Court's spoliation holding. Accordingly, the September 2022 Bankruptcy Opinion does not contain any analysis regarding spoliation, and both parties base their arguments on the analysis articulated in the January 2020 Bankruptcy Opinion. Appellant Br. at 48; Appellee Br. at 45. Because it appears that the spoliation issue was beyond the scope of the March 31, 2021 Order's remand instructions, the Court now evaluates the analysis in the January 2020 Bankruptcy Opinion. *See Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) (stating that, on remand, a lower court is not permitted to address matters that were "conclusively decided" by the reviewing court, or "any issue that could have been but was not raised on appeal" (quoting *United States v. Husband*, 312 F.3d 247, 250–51 (7th Cir. 2002))).

*Cole v. Keller Indus., Inc.*, 132 F.3d 1044, 1046–47 (4th Cir. 1998)).  The parties agree that, in the

Fourth Circuit, to prove spoliation, a party must show:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Goodman v. Praxair Services, Inc.*, 632 F. Supp.2d 494, 509 (D. Md. 2009) (quoting *Thompson v.*

*Dep't of Hous. & Urb. Dev.*, 219 F.R.D. 93, 101 (D. Md. 2003)).  As to the first factor, "[t]he duty

to preserve material evidence arises not only during litigation but also extends to that period before

the litigation when a party reasonably should know that the evidence may be relevant to anticipated

litigation." *Silvestri*, 271 F.3d at 591 (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir.

1998)).

     In its January 2020 Opinion, the Bankruptcy Court found that although Summit had control

over the relevant evidence (the guarantees) when they were destroyed, "Summit had no duty to

preserve the guarantees in perpetuity." JA 1272.  The Bankruptcy Court continued that, based on

the testimony from Summit's corporate designee, it was clear that "Summit destroyed the

documents long before thoughts of litigation against Byron David arose" and that Summit's "long-

standing blanket policy of destroying guarantees was not in effect for the sole purpose of spoliating

evidence for litigation." JA 1272–73.  Thus, the Bankruptcy Court found that David had failed to

meet his burden on the first element of spoliation.  Considering the testimony from Summit's

corporate designee regarding Summit's then-current document retention policy, *see* JA 1008,

1014, and that "less than half of 1% of all loans proceed to litigation," JA 1014–15, the Court

agrees that at the time Summit destroyed the guarantees at issue in this case—about a month after

their signing under the then-current document retention policy, *see* JA 1010–11—Summit would

not have reasonably known that the guarantees may someday be relevant to litigation. The Court, thus, agrees that David failed to present evidence sufficient to meet the first element of spoliation.

Although the Bankruptcy Court could have stopped there, it went on to find that David had also failed to meet his burden on the second element of spoliation, explaining that its "inherent authority may only be exercised to sanction 'bad-faith conduct,' and 'must be exercised with restraint and discretion[.]'" JA 1273 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). The Court finds that the Bankruptcy Court misstated the law here: a party's culpability need not rise to the level of "bad faith" for it to be held liable for spoliation. *See Hodge*, 360 F.3d at 450 (confirming that "bad faith" is sufficient but not necessary to permit a spoliation inference); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 497 (E.D. Va. 2011) ("In the Fourth Circuit, any level of fault, whether it is bad faith, willfulness, gross negligence, or ordinary negligence, suffices to support a finding of spoliation."). However, the Bankruptcy Court's misstatement of the law does not change the ultimate outcome: that David failed to meet his burden on all elements of spoliation.[13] Thus, the Court finds that the Bankruptcy Court did not err in its January 2020 Opinion by finding that David failed to establish spoliation against Summit, and thus, that his claims were not disallowed on that basis.

---

[13] Judge Alston reached the same conclusion regarding the spoliation issue in his May 4, 2021 Order issued in the cross-appeal on Claim 4-3. *David v. Summit Cmty. Bank*, 536 F. Supp. 3d 68, 74–77 (E.D. Va. 2021), *amended on denial of reh'g*, No. 120-cv-00721, 2022 WL 303300 (E.D. Va. Feb. 1, 2022).

## IV.   CONCLUSION

For the foregoing reasons, the Bankruptcy Court's September 30, 2022 Memorandum

Opinion and September 30, 2022 Order Overruling Claim Objections are

**AFFIRMED**

It is **SO ORDERED.**

Dated: August 30, 2023
Alexandria, Virginia

_____/s/
Patricia Tolliver Giles
United States District Judge

24